## Ferber v. American Lamp Corp.

*Arthur Salus,* for plaintiff.
*Norma Zarwin,* for defendants.

BULLOCK,*J.,* September 5, 1980—Before us are two actions in equity which were consolidated for trial. The court heard these cases on October 10 and 12, 1979 and January 18, 1980. Following the trial, the court directed counsel to furnish certain fiscal information which was done in the form of a letter from plaintiff's counsel and exhibits thereto and a response from defense counsel. This material has been marked "Court's Exhibit 1" and made a part of the record herein.

In the first action (C. P., July term, 1974, no. 339) Annette Ferber has sued her three brothers, Harry Cohen, Isadore Cohen and Joseph Cohen, and the American Lamp Corporation. The complaint alleges that plaintiff is owner of certain shares in the corporation and prays that defendants be directed to account for distributed and undistributed net income of the corporation, to make the corporate books and records available to plaintiff, to pay dividends to plaintiff, to pay her the value of her shares and to grant such other relief as the court deems proper. Subsequently, an amended complaint was filed, which attached a copy of the will of

Benjamin Cohen dated July 22, 1948. It further averred that Benjamin Cohen died in 1949, leaving plaintiff a share of the profits in his business and that her defendant brothers have denied her what she has been entitled to over the years. In addition to repeating the prayer of the original complaint, the amended complaint prayed for "judgment to be entered in favor of plaintiff and against defendants for that portion of the Estate of Benjamin Cohen defendants received and to which plaintiff is entitled."

In the second action (C. P., July term, 1974, no. 5322) Annette Ferber has sued her same three brothers only, alleging that she and they are partners in the ownership of premises 1136-1138 North American Street, Philadelphia, Pa., and praying for an accounting, the dissolution of the partnership, the payment to plaintiff of money due her and such other relief as the court deems proper.

The 1948 will of Benjamin Cohen provided in paragraph 7 as follows:

"7. I order and direct that my present business shall be conducted by my executors, hereinafter named, their survivors or successors, and that the management and control of said business shall be under their supervision and management. I further direct that my sons, Samuel and Joseph, upon reaching their majority shall, if they so desire, join with my executors in the management and control of the said business, it being my purpose and intention that after my decease, my sons shall carry on and conduct my business so long as they shall so elect. I direct that the profits of the business, after allowing for a sufficient working capital to carry on and maintain the purposes of the business, be divided in the following proportions:

One-third thereof unto my beloved wife, Bella Cohen, and the balance thereof in equal shares among my children, Harry, Isadore, Samuel, Joseph and Annette."

In construing this will we are obliged to honor the intent of the testator. He obviously intended that his sons continue to manage the business he had built. Apparently, he did not intend that his daughter, plaintiff, share in this management, but did intend that she share in the profits. A question arises, however, as to what the testator meant by the word "profits." He specifically indicated that working capital should be allowed for before computation of profits. However, did he also intend that salaries for sons working in the business be allowed for before computation of profits? No evidence was offered at trial intended to throw light on what Benjamin Cohen had in mind when he used the word "profits." We note, however, that he was an individual proprietor. For him it was not important to distinguish between his salary and his profit. He was in a position to figure a year's business and know that it took in a certain number of dollars more than it put out. He was entitled to support himself and his family on the difference, regardless of what it was called. In our view, Benjamin Cohen used the word "profits" to refer to a sum to be computed without taking into consideration salaries of the managing sons. We believe that the testator intended that the sum he would have been entitled to take home as sole proprietor be divided among his wife and children as indicated. It was his wish that all the male children work in the business, but that the family females, his wife and daughter, benefit from the business without working in it. A more difficult question might be before us if plaintiff were a son whom the

testator intended to work in the business, but who did not. It is clear, however, that the testator did not intend that the present plaintiff's receipts from the business be in any way contingent upon her working in the business. Defendants have emphasized that plaintiff worked in the business briefly and did not like the work; we regard this fact as utterly irrelevant.

The trial herein developed the fact that in 1959 the business was incorporated as American Lamp Corporation. Also, the three individual defendants were directors of a second corporation, Atlantic Industries, Inc., a sales corporation for the principal corporation. Plaintiff was given 12 percent of the shares of American Lamp Corporation, but no shares in Atlantic Industries, Inc.

Counsel have made numerous technical legal arguments with reference to the two corporations involved herein and the real estate on which the corporations do business. Benjamin Cohen, in his will, devised to plaintiff a proportion of the profits of "my present business." We regard his business as a unit, whether or not it was thereafter carried on in the form of one or more corporations. Moreover, we regard the ownership of the real estate as an integral part of the business. We do not, however, believe that plaintiff was given any right, as she contends, to partition the real estate. Nor do we think her entitlement to relief is based on her status as a minority shareholder in American Lamp Corporation. Incidentally, we note that, although plaintiff was given shares representing only 12 percent of the ownership of the corporation, this fact in no way affects her right to 13.33 percent of the profits of the business, as devised by the testator.

Although plaintiff's claim is from the time of her father's death in 1949 to the present, defendants argue that we may not consider any claim prior to

her majority in 1963. Although it appears that her brothers ignored her rights under the father's will during that period, plaintiff, after becoming an adult on September 12, 1963, released any claim against Harry Cohen, her guardian, under her father's will, and on September 4, 1964 released any claim against defendants Harry Cohen and Isadore Cohen with reference to the estate of her mother who died in 1963. Plaintiff contends that these releases should not be considered since they were not pleaded. However, they were offered and admitted into evidence without objection by plaintiff. Under the circumstances, we conclude that plaintiff is barred from relief for events occurring prior to the execution of these releases.

Having concluded that "profits" to Benjamin Cohen meant the money he could take home from the business, we now consider what the individual defendants took home from the business from 1963 on. The court's Exhibit 1, the greater part of which is agreed upon by counsel, indicates that each of the three defendants during the period involved received $684,000 in salaries and $33,000 in dividends. Plaintiff claims that each also received $321,000 in fringe benefits. Defendants challenge this figure, but without submitting a figure they would agree to. Defendants agree that the business spent $101,500 in automobile and related expenses for defendants and $139,000 for a boat, entertainment and travel expenses. Defendants contend that these were all business expenses and were not personal benefits to defendants. Finally, plaintiff points to $435,000 in accrued pension benefits for defendants.

We do not believe that a boat is necessary for a lamp business. There was testimony that one of defendants is an enthusiastic boatsman. We cannot

conclude that no personal benefit from expenses for the boat or entertainment accrued to defendants personally. Moreover, we take judicial notice of the custom of business executives driving company cars to the extent they need not purchase personal cars in their own names. We believe that a very fair figure representing benefits to defendants from business expenditures for automobiles, boat purchase and maintenance and entertainment is $100,000. We note, moreover, that there is no evidence that plaintiff was ever permitted enjoyment of the company boat or otherwise allowed to share in any luxurious "expense account" living.

Apparently $192,000 was spent by the corporation for medical insurance and payments for all its employes, including defendants. This information is too indefinite for us to draw any conclusion as to the amount allowable to defendants.

We thus conclude that the personal benefit of the three defendants jointly was as follows:

| | |
|---|---|
| Salaries from American Lamp Corp. | $1,469,700 |
| Dividends from American Lamp Corp. | 99,000 |
| Salaries from Atlantic Industries | 608,500 |
| Automobiles, boat, and entertainment (through 1978) | 100,000 |
| Pension contributions | 435,000 |
| TOTAL | $2,712,100 |

Defendants accordingly each during the period 1963-1979 received *at least* $904,000, in contrast to plaintiff's $13,553.

Some evidence has been offered with reference to the undistributed earnngs of the corporation herein. We will, however, not attempt to determine whether any of this sum is distributable to plaintiff. We will

accept defendants' business judgment that this is "working capital" in accordance with the testator's will.

We have noted that defendants considered at least $2,712,100 of business funds as distributable for their benefit. It is our view that this is at minimum the fund which the testator intended to be used to compute the annual sums due plaintiff. Plaintiff's percentage share was 13.33 percent. Plaintiff was, therefore, entitled to receive at least $361,522.93. She did in fact receive $13,553, leaving a balance due of $347,969.93 as of 1979. We believe it appropriate to add to this figure an additional sum representing 1980 to make a total sum of $370,000. Our computation of interest at 6 percent on this sum, based on $21,764.70 payable each year, is $133,175.48.

We do not agree with plaintiff's contention that she is entitled to force the sale of any property belonging to or used by the lamp business herein. Nor is it our intention to attempt to resolve plaintiff's claim forever. We do not believe the facts of this case warrant our attempting to do this. We believe that this opinion may serve as a guide to the parties as far as future payments are concerned.

Since this is an equity case, we will conclude by commenting on the equities herein. We believe plaintiff has been dilatory about seeking enforcement of her rights, hopefully because of a desire to avoid litigation among family members. Defendant brothers, however, compelled this suit. They have behaved in a way that betrayed their father's trust. They, for all practical purposes, ignored their father's provision for his daughter, their sister. Nor did they otherwise show any real concern for their sister. They developed for themselves a lifestyle of luxury, but made no

ongoing provision for their sister whatever. They even saw her reduced to accepting public assistance for two years. At one point, plaintiff, after a divorce, had a breakdown and was unable to take care of her child, who , for a time, was placed in a foster home. During this period, apparently, defendants jointly contributed to plaintiff the magnificent sum of $37.50 every week or two. Since their fraternal feeling is virtually absent, we hope that in the future the legal compulsion embodied in this opinion and decree will prompt them to honor the wishes of their father, who left them the business on which they have been living so handsomely.

Since defendants' failure to comply with the will of their father with respect to plaintiff was done both in their individual capacities and in their capacities as officers and directors of American Lamp Corporation, we believe that judgment herein should be entered against all defendants.

## DECREE NISI

And now, September 5, 1980, judgment is entered on behalf of plaintiff, Annette Ferber, against all defendants, American Lamp Corporation, Harry Cohen, Isadore Cohen and Joseph Cohen, in the sum of $370,000 and in addition, $133,175.48 interest thereon unless exceptions are filed hereto within 20 days hereof.